UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION OF ONTARIO PRINCIPALS' COUNCIL, GORDANA STEFULIC, VIVIAN MAVROU, AND VARLA ABRAMS,<br><br>Applicants. | No. 2:13-mc-120-LKK-KJN<br><br><br>ORDER |

INTRODUCTION

Presently pending before the court is an *ex parte* application by the Ontario Principals' Council ("OPC"), Gordana Stefulic ("Stefulic"), Vivian Mavrou ("Mavrou"), and Varla Abrams ("Abrams") (collectively, "Applicants") for an order pursuant to 28 U.S.C. § 1782 granting Applicants leave to conduct discovery in this district for use in contemplated foreign litigation. (ECF No. 1.) After considering the briefing and other documentation in support of the application, as well as the applicable law, the court grants the application in part along the terms outlined in this order.

BACKGROUND

The background facts for purposes of this application are generally taken from the Applicants' memorandum of points and authorities and various declarations in support of the application. (See generally Application, ECF No. 1; Declaration of Varla Abrams, ECF No. 1-1; Declaration of Vivian Mavrou, ECF No. 1-3; Declaration of Gordana Stefulic, ECF No. 1-4;

1

1  Declaration of Tom Warren, ECF No. 1-5 ["Warren Decl."]; Declaration of Applicants' Counsel
2  Michael Jason Lee, ECF No. 1-2 ["Lee Decl."].)

3       Stefulic, Mavrou, and Abrams are school administrators in Ontario, Canada.  Abrams is
4  also a member of the OPC, a voluntary professional association of elementary and secondary
5  school professionals in Ontario, Canada.  According to Applicants, they have been the targets of
6  explicit online postings and comments on numerous websites accusing each of them of various
7  incidents of egregious professional misconduct and illegal activity, including lewd and criminal
8  sexual acts involving minor students.  Applicants deny such accusations and believe that the same
9  individual or group of individuals may be responsible for the allegedly defamatory online
10 postings.

11      The particular online posting that is the focus of this application is a July 12, 2013 posting
12 made on the Edublogs website (www.edublogs.com); more specifically, on a blog located at
13 www.pervertedtorontoteachers.edublogs.org, which has recently been archived and is no longer
14 accessible to the public through the Edublogs website.[1]  This posting, *inter alia*, accused
15 Applicants of sexual misconduct with underaged students and alleged a coverup by the school
16 board and teacher unions. (Lee Decl. ¶ 7, Ex. 2.)  Although the Edublogs user(s) responsible for
17 the posting used a pseudonym, Edublogs informed Applicants that the IP addresses connected
18 with the account that created the allegedly defamatory blog and posting were attached to an
19 anonymous proxy service named A1 Anonymous Proxy, associated with the website
20 www.a1p.org.[2]  (Warren Decl. ¶¶ 4-7, Ex. 1.)

21      According to research by Applicants' counsel, the A1 Anonymous Proxy website is
22 owned and/or operated by My Privacy Tools, Inc. ("Privacy Tools"), a California corporation that
23 was voluntarily dissolved around June 15, 2011, and/or Scott Hall ("Hall"), the former president

---

[1] Edublogs describes itself as "[t]he World's most popular education blogging service…Edublogs lets you easily create & manage student & teacher blogs, quickly customize designs and include videos, photos & podcasts."  See http://edublogs.org/why-edublogs/.

[2] A1 Anonymous Proxy on its own website describes itself as "a web-based anonymous proxy service which allows anyone to surf the web privately and securely," which in turn includes posting on forums anonymously. (Lee Decl. ¶ 6, Ex. 1.)

and registered agent of Privacy Tools, who presently resides in Placer County, California. (Lee Decl. ¶¶ 12-24, Exs. 6-10.) By way of this application, and pursuant to 28 U.S.C. § 1782, Applicants seek leave to serve two subpoenas, directed at Privacy Tools and Hall respectively, seeking documents that identify the names and contact information and/or the IP numbers associated with the users who utilized the A1 Anonymous Proxy website to access the allegedly defamatory blog and posting on the Edublogs website on July 12, 2013. Applicants indicate that they intend to pursue defamation and related claims against potential tortfeasors in a contemplated civil lawsuit to be filed in Ontario, Canada, and that the requested discovery is essential to identify the potential defendants.

DISCUSSION

28 U.S.C. § 1782 provides, in part, as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a). As the United States Supreme Court has observed, section 1782 "is the product of congressional efforts…to provide federal-court assistance in gathering evidence for use in foreign tribunals." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004). "The prima facie showing mandated by the statute is only that the application be made (1) by a foreign or international tribunal or any interested person, (2) that it be for use in a proceeding in a

3

foreign or international tribunal, and (3) that the person or entity from which the discovery is sought be a resident of or be found in the district in which the application is filed." In re Bayer AG, 146 F.3d 188, 193 (3d Cir. 1998) (citation and internal quotation marks omitted); see also In re Republic of Ecuador, 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010).  The United States Supreme Court has held that section 1782 does not categorically require the information sought to be discoverable under the law governing the foreign proceeding, nor does it require the applicant to show that U.S. law would allow the discovery in domestic litigation analogous to the foreign proceeding.  Intel Corp., 542 U.S. at 253, 263.

Nevertheless, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."  Intel Corp., 542 U.S. at 264.  The United States Supreme Court has identified several factors that a district court should consider when ruling on a section 1782 application:

> (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests.

In re Republic of Ecuador, 2010 WL 3702427, at *2 (citing Intel, 542 U.S. at 264-65).

"An *ex parte* application is an acceptable method for seeking discovery pursuant to § 1782."  In re Roebers, 2012 WL 2862122, at *2 (N.D. Cal. Jul. 11, 2012) (citing In re Letters Rogatory from Tokyo Dist., Tokyo, Japan, 539 F.2d 1216, 1219 (9th Cir. 1976) (holding that subpoenaed parties may raise objections and exercise their due process rights by bringing motions to quash the subpoenas); In re Republic of Ecuador, 2010 WL 3702427, at **2-3 (accord).

In this case, Applicants meet the three statutory requirements of 28 U.S.C. § 1782.  First, Applicants are interested persons, because they allege that they have been harmed by the purportedly defamatory blog and posting at issue in the application, and intend to seek redress for such harm by commencing civil litigation in Ontario, Canada.  There is no requirement for Applicants to demonstrate that adjudicative proceedings are already "pending" or "imminent" –

1   only that such proceedings are "within reasonable contemplation."  Intel Corp., 542 U.S. at 259.
2   Second, the court has little difficulty in concluding that contemplated civil litigation in Canada
3   qualifies as a proceeding in a foreign tribunal for purposes of the statute.  Third, Applicants have
4   made a prima facie showing, by way of their investigation of publically available business entity
5   and property records, that Privacy Tools and Hall are residents of and/or are found in this district.
6   (Lee Decl. ¶¶ 12-24, Exs. 6-10.)

7       Having concluded that the court has the authority to permit issuance of the subpoenas
8   pursuant to 28 U.S.C. § 1782, the court next considers whether the four discretionary factors
9   identified by the United States Supreme Court weigh in favor of or against issuance of the
10  subpoenas.

11      Here, the material sought may not be accessible absent section 1782 aid, because neither
12  Privacy Tools nor Hall will be made parties to the contemplated litigation in Canada and thus
13  may not be within the Canadian court's jurisdictional reach.  (Lee Decl. ¶ 25.)  Therefore, the first
14  factor favors granting the application.

15      Additionally, there is nothing in the record before the court to suggest that Canada or
16  Canadian courts would not be receptive to the U.S. federal court assistance sought here.  It is not
17  necessary for an applicant to show that the foreign tribunal has reciprocal procedures available or
18  that the evidence sought would ultimately be admissible in the foreign tribunal.  See, e.g., John
19  Deere Ltd. v. Sperry Corp., 754 F.2d 132, 133 (3d Cir. 1985).  In this case, Applicants have made
20  at least a preliminary showing, based on a declaration filed by a Canadian attorney from Ontario,
21  Canada attaching specific Canadian legal authorities, that Applicants could potentially state a
22  cause of action under Canadian law based on the allegedly defamatory online postings, that the
23  information requested would be discoverable under the applicable Canadian procedural rules had
24  Privacy Tools and Hall been located in Canada, and that the requested discovery would not
25  interfere with freedom of speech or expression principles under the Canadian Charter of Rights
26  and Freedoms.  (See Declaration of Steven Shoemaker, ECF No. 1-6 ["Shoemaker Decl."], Exs.
27  ////
28  ////

1-12.)³  The second factor therefore also favors granting the application.

For these same reasons, it also does not appear that Applicants are attempting to circumvent foreign proof-gathering restrictions or policies; nor is there any indication that their requests run contrary to a policy of the United States.  Although speech on the Internet receives First Amendment protection, "freedom of speech has its limits; it does not embrace certain categories of speech, including defamation…."  Ashcroft v. Free Speech Coalition, 535 U.S. 234, 245-46 (2002).  "Statements which falsely impute the commission of a crime are libelous on their face."  Yow v. National Enquirer, Inc., 550 F. Supp. 2d 1179, 1183 (E.D. Cal. 2008).  Given the content of the online postings and the contemplated defamation claims to be alleged thereon, general First Amendment principles concerning freedom of speech would not preclude the requested discovery.  Also, disclosure of the requested information is not prohibited by the Stored Communications Act, because the subpoenas do not seek the content of any communications, but instead subscriber/customer information, and Applicants are not governmental entities.  See 18 U.S.C. § 2702(c)(6) ("A provider…may divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications…to any person other than a governmental entity.")  As such, the third factor likewise favors granting the application.

Furthermore, the requests do not seem to be unduly intrusive or burdensome.  The subpoenas essentially seek documents that identify the names and contact information⁴ and/or the true IP numbers associated with the users who utilized the A1 Anonymous Proxy website to access the allegedly defamatory blog and posting on the Edublogs website on July 12, 2013.  (ECF No. 1, Exs. A & B.)  As Applicants point out, the universe of responsive documents is

---

³ Because these findings are based on the necessarily limited record before the court in this *ex parte* proceeding, and in light of the court's limited expertise with respect to Canadian law, these findings are not binding for purposes of future proceedings involving Applicants or other parties, and are made for the limited purposes of the pending application only.

⁴ Specifically, the subpoenas seek the user's first and last name; e-mail addresses; mobile, work, home, and other telephone numbers; country; postal code; Instant Messenger screen names; websites related to the user; and the current account status (active, deactivated, permanently deleted, etc.).  (ECF No. 1, Exs. A & B.)

6

likely to be relatively small, thereby avoiding significant burden.  Thus, the fourth factor again favors granting the application.

Because all four discretionary factors militate in favor of granting the application, the court grants the application upon the terms specified below.  The court finds that doing so on an *ex parte* basis is permissible, because Privacy Tools and Hall will have an opportunity to raise objections and exercise their due process rights by bringing motions to quash the subpoenas after service with the subpoenas.

Applicants further request the court to issue an order prohibiting Hall and Privacy Tools from notifying the A1 Anonymous Proxy website users involved that Applicants are seeking their information via subpoena.  Applicants contend that there is a substantial danger that these users, if notified of the subpoenas, would destroy critical evidence located on their personal hard drives and computers before Applicants would be able to obtain a court order prohibiting destruction of evidence from an appropriate jurisdiction.  Although the court appreciates Applicants' concern, Applicants provide no discussion or analysis of applicable statutes or case law in support of such a request.  Indeed, the users involved may have due process and other legal rights to contest the subpoenas on certain grounds, and Hall and/or Privacy Tools may well have legal obligations to notify their subscribers or customers of such subpoenas.  In short, Applicants have not made a sufficient showing of entitlement to such relief.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Applicants' *ex parte* application for an order pursuant to 28 U.S.C. § 1782 granting Applicants leave to conduct discovery in this district for use in contemplated foreign litigation (ECF No. 1) is GRANTED IN PART along the terms outlined in this order.
2. Applicants may serve on Hall and Privacy Tools subpoenas in substantially similar form to those attached as Exhibits A and B to the application, setting a reasonable date for compliance.
3. Hall, Privacy Tools, and/or any other interested person may raise objections and/or move to quash or modify the subpoena, as appropriate, prior to the date by which

1  compliance is requested.  Before the filing of any motion, the parties, entities, or
2  persons involved shall meet and confer in good faith in accordance with Local Rule
3  251.  Furthermore, pending resolution of any such motion by the court, Hall and
4  Privacy Tools shall make appropriate efforts to maintain and not destroy any
5  documents responsive to the subpoenas.

6. 4. Any documents produced pursuant to the subpoenas may be used solely for purposes
7  of preparing for contemplated litigation in Canada, and shall not be disclosed to
8  persons other than Applicants or Applicants' counsel.  Other than the specific names,
9  contact information, and/or IP numbers requested in the subpoenas, Hall and/or
10 Privacy Tools shall redact any financial or other confidential information (such as
11 government identity numbers, credit card numbers, etc.) related to the users prior to
12 producing any responsive documents.

13. 5. Applicants shall serve a copy of this order on Hall and Privacy Tools along with any
14 subpoena.

15  IT IS SO ORDERED.

16  Dated:  December 20, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE